

# THE ATTORNEY GENERAL
## OF TEXAS

May 22, 1987

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Stan Schlueter
Chairman
Ways and Means Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-707

Re:   Authority of the State Securities Board to adopt a rule deleting certain factors which the board has heretofore considered in determining whether a particular securities issue is fair, just and reasonable

Dear Representative Schlueter:

You ask whether the State Securities Board has authority to promulgate proposed Rule 7 T.A.C. 113.3, 12 Tex. Reg. 456 (1987). Your concern appears to be directed to subsection (14) which provides:

> (14)  Certain firm commitment common stock offerings.
>
> (A)  Definitions of terms.  The following words and terms, when used in this paragraph, shall have the following meanings, unless the context clearly indicates otherwise.
>
> (i)  Common stock -- the non-assessable underlying residual equity security of a corporate issuer, which security entitles the owner or holder thereof to vote on the election of directors or others charged with the management of the affairs of the issuer and on such matters as merger, dissolution, or amendment of the articles of incorporation or comparable governing instrument, with no right to receive a fixed sum in dividends and no right to priority claim in the distribution of assets upon the voluntary or involuntary liquidation, dissolution, or winding up of such corporate issuer.
>
> (ii)  Corporate issuer -- A corporation or business trust organized under the laws of, and having its principal place of business within, any state of the United States.

(iii) Firm commitment under-writing -- An agreement of the underwriter or underwriters to take and pay for the securities (other than securities subject to over-allotment options) at a closing within ten business days after the start of the offering, subject only to conditions common in agreements regarded as firm commitments in the securities industry.

(iv) Public offering price of at least $5.00 -- The common stock is offered to the public for cash of at least $5.00 per share; the common stock is not directly or indirectly divisible, convertible into or exchangeable for, and does not include the right to acquire one or more other securities at a price of less than $5.00 each or likely to sell at a price of less than $5.00 each; and there is no plan to make a stock or other security dividend or distribution, stock or other security split, rights offering or other transaction the likely effect of which will be to reduce the market price of the common stock to less than $5.00 per share. If any of such transactions occurs within one year after the effective date of the registration statement covering such common stock, it will be presumed, subject to rebuttal by clear and convincing evidence, that the public offering price of the common stock was not at least $5.00 per share. Further, such an occurrence is deemed to constitute sufficient grounds for the issuance of an order pursuant to the Securities Act, 5.0.

(v) Qualified underwriter -- A dealer who is a member of the National Association of Securities Dealers and either the New York Stock Exchange or the American Stock Exchange.

(B) Applicability of fairness standards to firm commitment-common stock offering. Notwithstanding paragraphs 2-6, 8-10, 11(A) and (B), and 13 of this subsection, the offering and sale pursuant to a registration statement filed under the Federal Securities Act of 1933, as amended, of common stock by a corporate issuer in a bona fide firm commitment, underwritten public offering managed by a qualified underwriter, shall be deemed to be fair, just, and equitable provided that the following conditions shall have been met in connection with the offering and sale:

> (i)  The common stock shall have a public offering price of $5.00 per share; and
>
> (ii)  the aggregate gross proceeds to the corporate issuer from the firm commitment underwriting shall be at least $2,000,000. (Emphasis added).

You question whether the State Securities Board "would be abdicating a large portion of the responsibility that the Legislature has mandated, under the existing statute, that the Board should carry out" if such rule were promulgated.

Article 581-10, V.T.C.S., Examination of Application; Permit provides:

> A.  Commissioner to Examine Application; Grant or Deny.
>
> Upon the filing of an application for qualifying securities under Section 7A, it shall be the duty of the Commissioner to examine the same and the papers and documents filed therewith. If he finds that the proposed plan of business of the applicant appears to be fair, just and equitable, and also that any consideration paid, or to be paid, for such securities by promoters is fair, just and equitable when such consideration for such securities is less than the proposed offering price to the public, and that the securities which it proposes to issue and the methods to be used by it in issuing and disposing of the same are not such as will work a fraud upon the purchaser thereof, the Commissioner shall issue to the applicant a permit authorizing it to issue and dispose of such securities. Should the Commissioner find that the proposed plan of business of the applicant appears to be unfair, unjust or inequitable, he shall deny the application for a permit and notify the applicant in writing of his decision.

Subsection D, Examination of Application; Permit, was added to article 581-10, V.T.C.S., by Acts 1983, 68th Leg., ch. 465, §4, at 2716 (eff. Sept. 1, 1983). It provides:

> D.  Commissioner's Discretion.  In applying the standards of this Act, the Commissioner may waive or relax any restriction or requirement in the Board's rules that, in his opinion, is unnecessary

for the protection of investors in a particular case.

Your concern is directed to language in that portion of the proposed rule which reads:

(B) Applicability of fairness standards to firm commitment-common stock offering. Notwithstanding paragraphs 2-6, 8-10, 11(A) and (B), and 13 of this subsection, the offering and sale pursuant to a registration statement filed under the Federal Securities Act of 1933, as amended, of common stock by a corporate issuer in a bona fide firm commitment, underwritten public offering managed by a qualified underwriter, shall be deemed to be fair, just, and equitable provided that the following conditions shall have been met in connection with the offering and sale:

(i)   the common stock shall have a public offering price of $5.00 per share; and

(ii)   the aggregate gross proceeds to the corporate issuer from the firm commitment underwriting shall be at least $2,000,000.

The scenario you envision if the proposed rule is promulgated is set out succinctly in your inquiry, and states:

The board would be saying, in effect, that if an investment banker or syndicate of investment bankers (i.e., stock brokers) determine at a minimum that they are willing to buy for approximately $1,800,000 an issue of common stock (which they will have already pre-sold to public investors for at least $2,000,000), the offering will be conclusively presumed by the State to be fair, just and equitable to such public investors. That presumption would exist, no matter how much watered stock the corporate insiders hold, no matter how unequal the voting rights of the public investors, no matter how extensive are management's conflicts of interest and no matter how much of the corporation's assets the insiders may have taken in the form of loans to themselves.

Whatever the merits of the proposed rule, our concern must be limited to whether the rule is authorized by and consistent with statutory provisions. Texas Fire and Casualty Company v. Harris County Bail Bond Board, 684 S.W.2d 177 (Tex. App. – Houston [14th

Dist.] 1984, writ ref'd n.r.e.).  In determining whether an agency has exceeded its rule-making authority, the critical factor to be considered is whether the rule harmonizes with the general objective of the statute.  State Board of Insurance v. Deffebach, 631 S.W.2d 794 (Tex. App. - Austin 1982, writ ref'd n.r.e.).

Subsection D of article 581-10, V.T.C.S., vests broad authority in the commissioner to waive or relax rules.  However, it does not grant the commissioner authority to waive any requirement mandated by the statute.  Article 581-10A is explicit in requiring that an application for qualifying securities under section 7A be examined by the commissioner and found to be "fair, just and equitable" as it relates to (1) the proposed plan of business of the applicant and (2) any consideration paid, or to be paid for such securities when such consideration for such securities is less than the proposed offering price to the public.  The statute also mandates that the commissioner deny the application for a permit if the commissioner finds "that the proposed plan of business of the applicant appears to be unfair, unjust or inequitable."

It is our opinion that a rule which would allow the securities commissioner to waive the "fair, just and equitable" requirement on the basis of the offering price per share and the amount of aggregate gross proceeds to the corporate issuer from the firm commitment underwriting, would permit the commissioner to subvert the intent of the legislature.

## S U M M A R Y

The State Securities Board does not have authority to promulgate proposed Rule 7 T.A.C. 113.3.  Its provisions, which authorize the commissioner to waive the requirement that offerings "shall be deemed fair, just and equitable," cannot be harmonized with the legislative intent expressed in article 581-10A, V.T.C.S., that application be denied if the plan of business appears to be unfair, unjust or inequitable.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Tom G. Davis
Assistant Attorney General